UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re

                                        Chapter 11

Flushing Hospital and Medical Center
d/b/a The New York Flushing Hospital
Medical Center,                                  Case No. 98-17475-CEC
                          Debtor.
----------------------------------------------------------x
Avrum J. Rosen, Trustee of the Flushing
Hospital Creditor Trust,
                          Plaintiff,

-against-                                    Adv. Pro. No. 07-1600-CEC

Breitner & Hoffman, P.C.,
                          Defendant.
----------------------------------------------------------x
Flushing Hospital Medical Center,
                          Plaintiff,

-against-                                    Adv. Pro. No. 07-1618-CEC

Breitner & Hoffman, P.C.,
                          Defendant.
----------------------------------------------------------x

## DECISION

APPEARANCES:

| | |
|---|---|
| Martin G. Bunin, Esq. | Patrick T. Collins, Esq. |
| Alston & Bird LLP | Robert C. Yan, Esq. |
| 90 Park Avenue | Farrell Fritz, P.C. |
| New York, New York 10016 | 1320 RexCorp Plaza |
| Attorneys for Avrum J. Rosen, Trustee of the | Uniondale, New York 11556 |
| Flushing Hospital Creditor Trust | Attorneys for Flushing Hospital and Medical Center |
| | |
| Avrum J. Rosen, Esq. | Roy H. Carlin, Esq. |
| The Law Offices of Avrum J. Rosen, PLLC | Breslow & Walker, LLP |
| 38 New Street | 767 Third Avenue, 31st Floor |
| Huntington, New York 11743 | New York, New York 10017 |
| Trustee of the Flushing Hospital Creditor Trust | Attorneys for Breitner & Hoffman, P.C. |
| | |
| Christopher B. Hitchcock, Esq. | |
| John Hanson, Esq. | |
| Hitchcock & Cummings LLP | |
| 757 Third Avenue, 25th Floor | |
| New York, New York 10017 | |
| Attorneys for Breitner & Hoffman, P.C. | |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motions of Breitner & Hoffman, P.C. ("Breitner") to dismiss an adversary proceeding brought by Avrum J. Rosen, trustee of the Flushing Hospital Creditor Trust (the "Trustee"), and for summary judgment in an adversary brought by Flushing Hospital Medical Center (the "Debtor " or "Flushing Hospital").  For the following reasons, Breitner's motions are denied.

Jurisdiction

This Court has jurisdiction over these core proceedings under 28 U.S.C. §§ 1334(b) and 157(b), the Eastern District of New York standing order of reference dated August 28, 1986, and the order dated May 18, 2000 confirming the plan of reorganization in this case.  This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

Background

The following are the undisputed facts with respect to the action brought by the Debtor, and are the relevant allegations of the Trustee's complaint.

In June 1995, Maira Gonzalez, an infant by her mother and natural guardian, Laura Gonzalez, and Helmuth Gonzalez (collectively, "Gonzalez") commenced a medical malpractice action in New York state court against Flushing Hospital and two individuals, Young Min Kim and John Hansalim.  Breitner appeared as counsel for Flushing, Kim and Hansalim.  Thereafter, in August 1996, Gonzalez commenced an action against Dr. Geddis Abel Bey ("Dr. Bey") and Dr. Jonathan Cha.  Breitner appeared as counsel to Flushing Hospital, Dr. Bey and Dr. Cha.  In February 1997, these actions were consolidated for a joint trial (the "Gonzalez Action").

On June 2, 1998, Flushing Hospital filed a voluntary petition under chapter 11 of the Bankruptcy Code, and the Gonzalez Action was stayed pursuant to § 362(a) of the Bankruptcy Code. Gonzalez filed a proof of claim for an unspecified amount based on the medical malpractice claim underlying the Gonzalez Action. Breitner filed two proofs of claim for pre-petition legal services and disbursements; one was for an unliquidated amount, and the other sought $300,000.

By order dated May 18, 2000, the Debtor's plan of reorganization (the "Plan") was confirmed ("the Confirmation Order"). The Plan provided for the creation of a trust for the purpose of distributing $9.75 million to unsecured creditors (the "Creditor Trust"). The Creditor Trust was also to be responsible for liquidating the medical malpractice claims against the Debtor, and was given the authority to settle such claims. Creditor Trust Agreement, § 2.2.

The Plan included exculpation provisions for the Debtor, the Trustee, and their professionals, and provided for an injunction against the assertion of any claim against the Debtor that arose before the Plan's effective date (Plan at ¶¶ 14.4, 14.5), which were approved by the Confirmation Order (Confirmation Order at pp. 33-36, ¶¶ 18, 20, 22). The Confirmation Order also approved the Creditor Trust Agreement, pursuant to which the Creditor Trust was formed and administered. (Confirmation Order at p. 32, ¶ 11.)

On May 30, 2000, the committee of unsecured creditors commenced an action against Breitner seeking to recover $300,000 in alleged preference payments.

After confirmation, on July 17, 2000, the Trustee filed a motion to approve a mandatory claims resolution process, under which all medical malpractice claims against the Debtor would be sent to mediation. On July 27, 2000, the Court granted the motion. Thereafter, on August 28,

2000, Garbarini & Scher ("Garbarini") was retained to represent the Trustee in the mediation of the majority of the medical malpractice claims.

On February 15, 2001, the Court so-ordered a stipulation of settlement between the Trustee, as successor to the committee of unsecured creditors, and Breitner, resolving the adversary proceeding seeking recovery of preference payments, and resolving Breitner's proofs of claim (the "Stipulation").  Pursuant to the Stipulation, one of the claims was withdrawn, and the other was allowed as a general unsecured claim in the amount of $296,741.85.  The Stipulation also included a release provision.

On June 4, 2002, the Court approved a stipulation between Gonzalez and the Trustee settling the claims against the Debtor in the Gonzalez Action for $2 million.  The Gonzalez Action continued against Dr. Bey.

On December 30, 2004, the Court entered a final decree in the Debtor's bankruptcy case, and on January 3, 2005, the Debtor's bankruptcy case was closed.

On October 28, 2005, Dr. Bey commenced an action in New York state court against Flushing Hospital and Breitner, asserting a legal malpractice claim against Breitner for its handling of the Gonzalez Action (the "Bey Action").

In September 2006, the New York state court approved a stipulation between Dr. Bey and Gonzalez in the Gonzalez Action.  In November 2006, Dr. Bey executed a $1 million confession of judgment in favor of Gonzalez and assigned his rights in the Bey Action to Gonzalez.

On May 24, 2007, Gonzalez agreed to discontinue the Bey Action against Flushing Hospital.  However, Breitner refused to consent to that discontinuance.

In June 2007, Breitner asserted cross-claims against Flushing Hospital for fraud and for indemnification or contribution for any amount awarded on the claims asserted against Breitner in the Bey Action.  On June 26, 2007, Breitner filed a third-party complaint against Garbarini seeking indemnification or contribution for any amount awarded against Breitner on those claims.

On September 28, 2007, the Trustee moved to reopen the Debtor's bankruptcy case for the purpose of commencing an adversary proceeding against Breitner.  By order dated November 20, 2007, the motion was granted, and these adversary proceedings were commenced shortly thereafter.

Discussion

1.  <u>Flushing Hospital v. Breitner</u>

On December 20, 2007, Flushing Hospital commenced an adversary proceeding against Breitner (the "Debtor Action").  Breitner seeks summary judgment dismissing the Debtor Action pursuant to Federal Rule of Civil Procedure 56, which is applicable to this action by Federal Rule of Bankruptcy Procedure 7056.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  When deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue of material fact to be tried.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  A fact is considered material if it "might affect the outcome of the

suit under the governing law."  Id. at 248.  No genuine issue exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).  On the other hand, if "there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  "The non-moving party must show that there is more than a metaphysical doubt regarding a material fact and may not rely solely on self-serving conclusory statements."  Rosenman & Colin LLP v. Jarrell (In re Jarrell), 251 B.R. 448, 450-51 (Bankr. S.D.N.Y. 2000) (citations omitted).

    A.    Exculpation

    The complaint seeks a declaratory judgment that the Debtor is not liable, and cannot be liable, on Breitner's cross-claims by reason of the exculpation provisions contained in Plan § 14.4 and decretal paragraph ("¶") 22 of the Confirmation Order, which provide:

> None of the Debtor, . . . the Creditors' Committee, the Creditor Trust, the Creditor Trust Trustee . . . nor any of their respective members, participants, officers, directors, employees, attorneys, advisors, directors, present trustees of the Debtor's Board of Trustees or agents . . . shall have or incur any liability to any holder of a Claim[1] or Interest[2] for any act or omission in connection with, or arising out of, the conduct of the case, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan except for willful misconduct, gross negligence or breach of fiduciary duty, and, in all

---

[1] "Claim" is defined in the Plan as "a claim against the Debtor as defined in Section 101(5) of the Bankruptcy Code."  (Plan § 1.15.)

[2] "Interest" is defined in the Plan as "the interest of a member or any other equity interest in the Debtor."  (Plan § 1.40.)

> respects, the Debtor, . . . the Creditors' Committee, and each of their
> respective members, participants, officers, directors, employees,
> attorneys, advisors, directors, present trustees of the Debtor's Board
> of Trustees, and agents . . . shall be entitled to rely upon the advice
> of counsel with respect to their duties and responsibilities under the
> Plan.

Confirmation Order ¶ 22; Plan § 14.4.

The Debtor alleges that the mediation was conducted in furtherance of the administration of the Plan, and therefore the exculpation provisions protect the Debtor from any liability arising from the mediation of the Gonzalez Action.  Breitner argues that these provisions apply only to pre-effective date claims, and not to claims that arose during the mediation, which occurred after the effective date of the Plan.  Breitner also argues that the wrongs alleged in the cross-claims are specifically excepted from the scope of the exculpation provisions.

It is apparent that the exculpation provisions quoted above are not limited to pre-effective date claims.  By their terms, these provisions apply to "any act or omission in connection with, or arising out of . . . the administration of the Plan."  Adopting Breitner's interpretation would render the "administration of the Plan" clause meaningless, because conduct during the administration of the Plan necessarily occurs after the effective date of the Plan.  This Court declines to adopt Breitner's interpretation of the exculpation provisions in the Plan and Confirmation Order.  See  Deep v. Copyright Creditors, 122 Fed. Appx. 530, 531-532 (2d Cir. 2004) ("[T]he bankruptcy court's 'interpretation of its order will not be disturbed absent a clear abuse of discretion.'" (quoting Truskoski v. ESPN, Inc., 60 F.3d 74, 77 (2d Cir. 1995)); Casse v. Key Bank Nat'l Ass'n (In re Casse); 198 F.3d 327, 332 (2d Cir. 1999) ("[T]he bankruptcy court's interpretation of its own order 'warrants customary appellate deference. The bankruptcy court

[is] in the best position to interpret its own orders.'" (quoting Colonial Auto Ctr. v. Tomlin (In re Tomlin), 105 F.3d 933, 941 (4th Cir.1997))).

Although a claim against Flushing Hospital for fraud may be excluded from the exculpation provision, the record does not contain undisputed facts sufficient to warrant a conclusion that Flushing Hospital engaged in fraudulent conduct with respect to Breitner or Dr. Bey.  Although Breitner alleges in the cross-claims generally that Flushing Hospital abandoned Dr. Bey, and engaged in a "scheme to defraud Bey and his counsel" by representing to them that Bey "would be represented at the mediation by . . .  Garbarini," these allegations are absent from Breitner's statement of material facts required pursuant to E.D.N.Y. LBR 7056-1.

Moreover, Breitner does not even allege in the cross-claims any facts from which it would be possible to conclude that any such misrepresentation (if one was made) involved scienter, which is a necessary element of a fraud claim.  See Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir.1995)("To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.").  Breitner cannot unilaterally avoid the effect of the exculpation clause simply by invoking the word "fraud"; it is up to the bankruptcy court to determine whether the Debtor's conduct falls outside the scope of the exculpation contained in the Plan and Confirmation Order. Deep, 122 Fed. Appx. at 531-532; Casse; 198 F.3d at 332.  Therefore, questions of fact exist which make it impossible to determine on this record whether Breitner's claims are precluded by the exculpation provisions.

Breitner's cross-claim for indemnification and contribution against the Debtor is for "negligence, breach of contract, and acts of omission and/or commission."  Cross-Claim at ¶ 18. On its face, this cross-claim does not allege "willful misconduct, gross negligence or breach of fiduciary duty," which would be excepted from the scope of the exculpation provision.  Because the record is also silent as to the precise factual basis for this cross-claim, there are, at a minimum, questions of fact precluding summary judgment here too; it is certainly impossible to conclude on this record that the Debtor's conduct falls outside the scope of the exculpation provisions.

The Debtor also argues that Breitner's cross-claims are barred by the release provision of the court-ordered stipulation entered into between the Trustee and Breitner, which resolved the preference action and resolved disputes regarding Breitner's proofs of claim.  The release provision in the stipulation provides that Breitner

> fully and irrevocably release[s] the Debtor, the Creditor Trust, the Creditor Trust Trustee and their attorneys, advisors and agents, as releasees (the "Releasees") from all claims, causes of actions, debts, obligations and liabilities, whatsoever, in law or equity, which against the Releasees, [Breitner] ever had, now have, or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of time to the day of the date of this Stipulation that arise from or relate to the claims, proofs of claim, actions and the [a]dversary [p]roceeding that are the subject of this Stipulation and the claims and causes of action that could have been alleged in the proofs of claim, actions and the [a]dversary [p]roceeding that are the subject of this Stipulation.

Stipulation at ¶ 15.

Breitner argues that the release provisions apply only to claims that existed prior to the date of the Stipulation, which was so-ordered on February 15, 2001.  It is not clear on this record whether Breitner's alleged claim against the Debtor arose before that date.  Thus, even if

Breitner's interpretation of the release is accepted, this question of fact precludes summary judgment.

The Stipulation's language providing for the release of all claims "that arise from or relate to the claims, proofs of claim, [and] actions" that were the subject of the Stipulation also gives rise to a question of fact.  To the extent that Breitner's underlying proofs of claim, that were settled pursuant to the Stipulation, sought fees related to the Gonzalez Action, the Stipulation's release provision may preclude the cross-claims because those claims "relate to" the Gonzalez Action.  Therefore, this Court would also be required to determine whether the Gonzalez Action was one of the actions for which Breitner sought fees and expenses in its proof of claim.

Since multiple questions of material fact prevent the Court from determining on this record whether the cross-claims are barred by the exculpation provisions in the Plan and Confirmation Order or the release in the Stipulation, Breitner's summary judgment motion with respect to this claim is denied.

B.    <u>Discharge and Injunction</u>

The Debtor's complaint also seeks a declaratory judgment that Breitner's cross-claims were discharged pursuant to § 1141(d)(1) of the Bankruptcy Code, Plan § 10.1, and Confirmation Order ¶ 18.  It also seeks a declaratory judgment that Breitner is enjoined from continuing the cross-claims pursuant to § 524(a)(2) of the Bankruptcy Code and the injunction provisions of Confirmation Order ¶ 20 and Plan § 14.5.

Section 1141(d)(1) provides, in pertinent part:

> Except as otherwise provided . . . in the plan, or in the order confirming the plan, the confirmation of a plan – (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not – (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan . . . .

11 U.S.C. § 1141(d)(1)(A).

Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).

Plan § 10.1 and Confirmation Order ¶ 18 provide, in pertinent part:

> [T]he rights afforded in [the] Plan and the treatment of all Claims and Interests therein shall be in complete satisfaction, discharge and release of all Claims against, and all Interests in, the Debtor or any of its assets or properties of any nature whatsoever.  Except as otherwise specifically provided [in the Plan and Confirmation Order], all Claims and Interests shall forever be satisfied, discharged and released in full on the Effective Date[3], and all holders of Claims and Interests shall be forever precluded and enjoined from asserting against the Debtor or the agents, advisors, present trustees of the Debtor's Board of Trustees, and representatives of the Debtor, other than . . . any Medical Employee[4] who is personally liable to a holder of a Medical Malpractice Claim[5] pursuant to a settlement of a medical malpractice action approved by a state or federal court, and

---

[3] The effective date of the Plan was June 2, 2000.

[4] "Medical Employee" is defined in the Plan as a person or entity "who has been or is employed by [Flushing Hospital] to perform medical services including, but not limited to, a resident, intern, nurse and/or physician assistant, and who has a right of indemnification against the Debtor."  (Plan §§ 1.46, 1.56.)

[5] "Medical Malpractice Claim" is defined in the Plan as an unsecured claim "based on allegations of medical malpractice."  (Plan §§ 1.47, 1.70.)

> the assets and properties of the Debtor, any other or further liabilities, liens, obligations or claims based upon any act or omission, transaction or other activity or security agreement or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date in connection with the Debtor or its properties, except with respect to FHMC Assigned Claims[6], and as otherwise expressly preserved or left unaltered pursuant to [the] Plan.

Confirmation Order ¶ 18; Plan § 10.1.

Confirmation Order ¶ 20 and Plan § 14.5 provide:

> [A]ll Persons who have held, hold or may hold Claims and any successors, assigns or representatives of the foregoing shall be precluded and permanently enjoined on and after the Effective Date as against the Debtor, . . . the Creditor's Committee, and any of their respective members, participants, officers, directors, employees, attorneys, advisors, directors, present trustees of the Debtor's Board of Trustees or agents . . . any of their successors, assigns or affiliates, or any of their assets and properties from (a) commencing, or continuing in any manner any claim, action or other proceeding of any kind with respect to any Claim or any other right or claim which they possessed or may possess prior to the Effective Date, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any Claim or any other right or claim which they possessed or may possess prior [to] the Effective Date, (c) creating, perfecting or enforcing any encumbrances of any kind with respect to any Claim or any other right or claim which they possessed or may possess prior to the Confirmation Date and (d) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due with respect to any Claim or any other right or claim which they possessed or may possess prior to the Effective Date.

(Confirmation Order ¶ 20; Plan § 14.5.)

Breitner argues that the cross-claims against Flushing Hospital arose post-confirmation, during the mediation of Gonzalez's medical malpractice claim, and therefore were not discharged

---

[6] "FHMC Assigned Claim" is defined in the Plan as all of the Debtor's preference claims and other avoidance powers, other than those specifically released, and all other pre-confirmation claims against third parties, except those claims arising under insurance policies and against parties that were released pursuant to the Plan. (Plan §§ 1.6, 1.37.)

by § 1141 of the Bankruptcy Code, Confirmation Order ¶ 18 or Plan §10.1, and likewise are not enjoined by § 524 of the Bankruptcy Code, Confirmation Order ¶ 20, or Plan § 14.5.

Flushing Hospital counters that it was not a party to the mediation of Gonzalez's claim, and that, pursuant to the Plan, it transferred responsibility for the liquidation and payment of Gonzalez's claim to the Creditor Trust.  Therefore, Flushing Hospital argues, it cannot be liable for anything that transpired in that mediation, including any failure to mediate the claims against Dr. Bey.  Flushing Hospital further argues that Breitner did not establish the occurrence of any wrongful conduct, and that the only underlying relationship that could give rise to any claim  by Dr. Bey against Flushing Hospital, which could even conceivably constitute a basis for Breitner's contribution claim, would be an agreement between Dr. Bey and Flushing Hospital.

Breitner contends that Flushing Hospital had an obligation to indemnify Dr. Bey, which survived confirmation and was not assigned to the Creditor Trust, and therefore, Flushing Hospital is liable for abandoning Dr. Bey during the mediation of Gonzalez's claim.  Though its argument is not cast in these terms, Breitner seems to be contending that Dr. Bey was a "Medical Employee" (defined in the Plan has a person employed by Flushing Hospital to perform medical services and who has an right of indemnification against the hospital), whose claims were expressly carved out of the discharge contained in Plan § 10.1 and Confirmation Order ¶ 18.

Breitner asserts that "Flushing Hospital provided Dr. Bey with an employment contract with indemnification for professional liability limited to 'public' patients of OB/GYN, admitted through the Emergency Department or Outpatient Department."  (Breitner Mem. of Law in Supp. at 8.)  The exhibit to which Breitner cites for support (Breitner Ex. 1, Compl. Ex. K) is an unrelated document; another exhibit seems to be the source of the alleged indemnification.  (See

Breitner Stmt. in Supp. Ex. 3.)  However, that document is a letter agreement between an entity other than the Debtor, Burling Obstetrics and Gynecology, P.C., and Dr. Bey; the record contains no evidence that Flushing Hospital was a party to that agreement.  In oral argument, Breitner conceded that it does not, at this time, have any evidence of a written agreement by Flushing Hospital to indemnify Dr. Bey.  (Tr.[7] at 15-16, 17.)  To the contrary, one of the exhibits offered by Breitner appears to show that, between November 1990 through November 2000, Dr. Bey was "not a paid employee."  (Breitner Stmt. in Supp. at Exhibit 4.)  Throughout the motion papers, Breitner refers to the Debtor as "Flushing Hospital (insurer)."  This, of course, begs the question, and certainly does not substitute for evidence of an obligation on the part of the Debtor to indemnify Dr. Bey, which is lacking.

Therefore, material questions of fact must be resolved before this Court can determine whether Flushing Hospital owed any obligation to Dr. Bey, and is so, whether that obligation was discharged pursuant to § 1142(d)(1)(A) and Confirmation Order ¶ 18, and is enjoined from being asserted against the Debtor pursuant to Plan § 14.5 and Confirmation Order ¶ 20.

Breitner argues that the "breach of good faith of the contract to defend Dr. Bey or retain Breitner" occurred after March 1, 2001, which is when Breitner asserts that it transferred the Gonzalez Action's legal file to Garbarini.  However, the Trustee disputes that the file was ever transferred to Garbarini.  (Tr. at 30.)  As noted above, questions of fact exists regarding when any such contract was entered into, or whether any such contract exists at all.  These material questions of fact preclude summary judgment.

---

[7] "Tr." refers to the transcript of the hearing held on June 10, 2008.

Separate from its arguments concerning Flushing Hospital's obligations to Dr. Bey, Breitner argues that Flushing Hospital had a duty to Breitner to inform Breitner that it was no longer counsel on the Gonzalez Action, or to inform it that mediation was taking place with respect to the Gonzalez Action.  It is unclear what the basis of this claimed duty would be, or whether it arises from the pre-petition relationship between the parties, and would be discharged pursuant to the Plan and Confirmation Order.  Therefore, questions of material fact preclude this Court from granting Breitner's motion for summary judgment based on this argument.

With respect to Breitner's cross-claim for fraud, the Debtor argues that Breitner has failed to establish when any alleged fraudulent acts took place.  Although the cross-claims allege that the Debtor, post-confirmation, engaged in a scheme to defraud Breitner, questions of fact exist relating to what fraudulent conduct, if any, occurred, and when any such fraudulent conduct allegedly took place.  It is therefore unclear whether the cross-claims are pre-petition, pre-confirmation, or post-confirmation and, thus, whether they are subject to the discharge and injunction provisions of the Bankruptcy Code, Confirmation Order, and the Plan.  See Texaco, Inc. v. Wolverine Exploration Co. (In re Texaco, Inc.), 218 B.R. 1, 7 (Bankr. S.D.N.Y. 1998) ("[A] claim is deemed to arise at the moment when the acts giving rise to the alleged liability are performed.").

C.      Injunction Pursuant to § 105(a) of the Bankruptcy Code

In addition to the injunctive relief sought pursuant to the Confirmation Order and the Plan, the Debtor's complaint also seeks injunctive relief pursuant to § 105 of the Bankruptcy Code, based upon the argument that the cross-claims violate the Bankruptcy Code, the Confirmation Order, and the Plan.

Breitner argues that summary judgment should be awarded because the Debtor cannot show that: (1) it can succeed on the merits; (2) legal damages are inadequate; (3) the balance of the hardships weighs in favor of the equitable relief; and (4) the public interest would not be disserved.  The Debtor argues that it need not show these elements to obtain an injunction under § 105, and that a permanent injunction may be granted to enforce this Court's retention of jurisdiction as provided in the Confirmation Order.

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

Section 105(a) may be invoked "'to enforce or implement' the Court's earlier orders, and to prevent abuses of process."  NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.), 317 B.R. 260, 274 (Bankr. S.D.N.Y. 2004).  "Exercise of the Court's section 105(a) authority in this manner, and for this purpose, vindicates the interests of the *Court*, as much as (and perhaps more than) it vindicates the interest of an individual litigant.  Particularly in such a situation, it is not surprising that the usual grounds for injunctive relief . . . need not be shown in a proceeding for an injunction under section 105(a)."  Id.  See also Britestarr Homes, Inc. v. City of New York (In re Britestarr Homes, Inc.), 368 B.R. 106, 108 (Bankr. D. Conn. 2007); Adelphia Commc'ns Corp. v. Am. Channel, LLC (In re Adelphia Commc'ns Corp.), 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006).

Therefore, Breitner's motion for summary judgment on this claim must be denied. It should be noted that if consideration of the public interest were necessary, it would weigh in favor of an injunction, because "[t]he public has a strong interest in ensuring that the orders of a bankruptcy court (like any other court) cannot be circumvented." Ames, 317 B.R. at 274 n. 68.

D.    Contempt and Damages

The last claim asserted in the Debtor's complaint seeks an order finding Breitner in contempt for violating the Confirmation Order, and awarding damages, fees, and costs. Breitner argues that summary judgment is warranted on this claim because there has been no willful violation of the Bankruptcy Code or Confirmation Order.

A party seeking to hold another in civil contempt bears the burden of proof to establish, by clear and convincing evidence, that a violation occurred, such as noncompliance with an order. King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995) (a party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner."); Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002). It must be proven that the alleged contemnor "had knowledge of and disobeyed a clear, explicit and lawful order of the court and that the offending conduct prejudiced the right of the [other] party." Levin, 277 F.3d at 251 (quoting Sager Spuck Statewide Supply Co. v. Meyer, 723 N.Y.S.2d 732, 733 (N.Y. App. Div. 2001)). A defense to civil contempt is that the alleged contemnor was "reasonably diligent and energetic in attempting to accomplish what was ordered," EEOC v. Local 638, 753 F.2d 1172, 1178 (2d Cir. 1985), aff'd, 478 U.S. 421 (1986), but was unable to comply with the order, Huber

v. Marine Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995).  A court may hold a party in contempt even if that party acted in good faith.  Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 129 n. 2 (2d Cir. 1979); Leadsinger, Inc. v. Cole, No. 05 Civ. 5606, 2006 WL 2266312, at *14 (S.D.N.Y. Aug. 4, 2006).

Since questions of fact exist regarding whether the cross-claims are barred by the exculpation clauses, or whether they are discharged and enjoined pursuant to the Bankruptcy Code and Confirmation Order, and since Breitner at all relevant times had knowledge of the existence of the Confirmation Order, this Court cannot conclude that Breitner is not in contempt of court as a matter of law.  Therefore, Breitner's motion for summary judgment on this claim must be denied.

For all the foregoing reasons, Breitner's motion for summary judgment in the Debtor Action must be denied.

2.  Trustee v. Breitner

On November 21, 2007, the Trustee commenced an adversary proceeding against Breitner  (the "Trustee Action") alleging that Breitner's third-party complaint against Garbarini violates the Confirmation Order and the Creditor Trust Agreement.  The Trustee sought damages for this violation and also sought to enjoin Breitner from continuing its third-party action against Garbarini.

Breitner seeks to dismiss the Trustee Action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this action by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.[8]

To defeat a motion to dismiss under Rule 12(b)(6), a complaint must set forth a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Conceivable claims are no longer sufficient. Id. (dismissal is appropriate when "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible"). As interpreted by the Second Circuit, the plausibility requirement does not create a heightened pleading standard, but rather a flexible standard that "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." Iqbal v. Hasty, 490 F.3d 143,157-158 (2d Cir. 2007). See Bell Atl., 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . ."). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl., 127 S. Ct. at 1969.

In assessing the adequacy of the complaint, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (quoting Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000)). The court's consideration is limited to the four corners of the complaint; documents attached to the complaint as exhibits or incorporated in it by reference; matters of which judicial notice may

---

[8] Originally, Breitner also requested that the Court abstain from hearing over this action, but on reply has withdrawn this prong of its motion. (Breitner Reply Mem. at 4.) Breitner's abstention request therefore will be treated as withdrawn.

be taken; and documents either in plaintiff's possession or of which he had knowledge, on which plaintiff relied in bringing suit.  Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).  A motion to dismiss under 12(b)(6) requires the court to evaluate a complaint's legal feasibility, "not to assay the weight of the evidence which might be offered in support thereof." Amalgamated Bank of N.Y. v. Marsh, 823 F. Supp. 209, 215 (S.D.N.Y. 1993) (quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

 A. Confirmation Order ¶ 22

 The Trustee claims that Breitner's third party complaint against Garbarini violates Confirmation Order ¶ 22, which is quoted in subdivision (1)(A) of this decision.  The Trustee alleges that Garbarini represented him in furtherance of "the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan," which is protected conduct under the exculpation provision of Confirmation Order ¶ 22.  The Trustee further alleges that Breitner filed proofs of claim in the bankruptcy case, and is therefore a holder of a "Claim," rendering it subject to that provision.

 Breitner argues that the discharge, release, and exculpation provisions provided in Confirmation Order ¶¶ 18 and 20 are improper bases for relief sought by the Trustee because those provisions are limited to pre-petition claims.  (Breitner Reply Mem. of Law in Supp. at 16-17.)  Breitner argues that the third-party complaint against Garbarini seeks redress for post-petition claims, and that Breitner is not barred from asserting those claims because disputes relating to its proofs of claim against the Debtor were settled.  Therefore, Breitner argues, the third-party complaint is beyond the scope of the Confirmation Order's provisions.

This argument is irrelevant to the Trustee's complaint, because the complaint does not rely on Confirmation Order ¶¶ 18 or 20 as a basis for relief.  To the extent this argument is made with respect to Confirmation Order ¶ 22, it is also unpersuasive.  That provision specifically provides that the Trustee's attorneys shall not incur liability to a holder of a claim for any act or omission in connection with the consummation or administration of the Plan.  The complaint alleges that Breitner received a general unsecured claim of $296,741.85 to be paid pursuant to the Plan, but then transferred its claim to another entity.  (Compl. ¶¶ 31, 32.)  The Trustee also alleges that Garbarini's representation was "in furtherance of the administration of the Plan." (Compl. ¶ 48.)  These allegations, and the supporting documentation (Compl. Ex. I), state a plausible claim for breach of Confirmation Order ¶ 22.

Attempting to make the case that the allegations in the third party complaint do not fall under Confirmation Order ¶ 22, Breitner argues that the Debtor's "post effective date abandonment" of Dr. Bey did not occur in connection with the confirmation, consummation, or administration of the Plan.  However, the conduct of Flushing Hospital, which is not a party to this action, is irrelevant to the adequacy of the Trustee's complaint, which alleges that Breitner's third party action for indemnification or contribution against Garbarini violates Confirmation Order ¶ 22.

Throughout its motion papers, Breitner refers to "Flushing Hospital (insurer)/Creditor Trust as its surrogates," apparently taking the position that Flushing Hospital, the Creditor Trust and Garbarini must be treated as alter egos.  Nothing in the record supports this conclusion. Under the Plan, the Creditor Trust is created as a separate entity, and succeeds to some, but not all of the right and obligations of the Debtor.  Garbarini is a law firm, not a "surrogate" for the

Debtor or the Creditor Trust. Certainly there is no basis, on Breitner's motion to dismiss, to accept as true this allegation, which is inconsistent with the Plan and the Creditor Trust Agreement.

This Court finds that the complaint sets forth plausible claims that Breitner violated Confirmation Order ¶ 22 by commencing the third-party action against Garbarini, based on the complaint's allegations that the mediation sessions were conducted in connection with "the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan," and that Garbarini's actions are included in the exculpation provision. Therefore, Breitner's motion to dismiss this claim must be denied.

B.    Creditor Trust Agreement § 5.8

The Trustee also claims that Breitner's third party complaint violates Creditor Trust Agreement § 5.8, which provides:

> No Trust Beneficiary[9] and no member of the Review Committee[10] or Professional Persons[11] engaged by the Trust shall be subject to any personal liability whatsoever, in tort, contract or otherwise, to any Person in connection with the Trust Assets[12] or the affairs of the Trust, and no Creditor Trust Trustee or agent or Professional Persons engaged by the Trust shall be subject to any personal liability whatsoever, in tort, contract, or otherwise, to any Person in

---

[9] The Creditor Trust Agreement defines "Trust Beneficiary" as the holder of one or more allowed unsecured or medical malpractice claims. (Creditor Trust Agreement § 1.1; Plan §§ 1.5, 6.1, 6.2.)

[10] The Creditor Trust Agreement defines "Review Committee" as "a committee comprised of three or more members . . . to serve in an oversight function in accordance with the terms of [the Creditor Trust Agreement]." (Creditor Trust Agreement § 1.1.)

[11] The Creditor Trust Agreement defines "Professional Person" as "a professional person retained pursuant to order of the Bankruptcy Court during the course of the Case, or by the Creditor Trust Trustee on or following the Effective Date." (Creditor Trust Agreement § 1.1.)

[12] The Creditor Trust Agreement defines "Trust Assets" means the assets that were transferred or assigned to the Creditor Trust, including the $9.75 million and the FMHC Assigned Claims (as defined in the Plan). (Creditor Trust Agreement § 1.1)

> connection with the Trust Assets or the affairs of this Trust, except for his or its own acts as shall constitute bad faith, willful misconduct, gross negligence, breach of fiduciary duty, or willful disregard of his or its duties and all such Person shall look solely to the Trust Assets for satisfaction of claims of any nature arising in connection with affairs on the Trust.

(Creditor Trust Agreement § 5.8.)

Breitner argues that this provision does not protect Flushing Hospital or the Creditor Trust from liability on the breach of the indemnity contract or their duty to Dr. Bey, or from liability on Flushing Hospital's obligation to its counsel, Breitner. First, whether the provision protects Flushing Hospital is irrelevant to this motion to dismiss because, again, Flushing Hospital is not a party to this action. Second, whether the provision would shield the Creditor Trust or its professionals from liability for breach of an indemnity contract is also irrelevant because Breitner does not allege the existence of any agreement by the Creditor Trust or Garbarini to indemnify Breitner or Dr. Bey.

Breitner's argument, made for the first time at the hearing on this motion, that a prospective exculpation clause such as the one contained in the Creditor Trust Agreement may not be enforced, must also be rejected. First, it should be noted that similar provisions are often approved in the context of plan confirmation. E.g., In re Source Ents., Inc., Case No. 06-11707, 2007 WL 2903954, at * 13 (Bankr. S.D.N.Y. Oct. 1, 2007), aff'd, 392 B.R. 541 (S.D.N.Y. 2008); In re PC Liquidation Corp., Case No. 05-89022 (Bankr. E.D.N.Y. Nov. 13, 2006), aff'd, 383 B.R. 856 (E.D.N.Y. 2008). In addition, the Confirmation Order, including the provisions approving the Creditor Trust Agreement, was entered on May 18, 2000. Confirmation orders are given *res judicata* effect, and may not be subject to collateral attack. Nancy Sue Davis Trust v. Davis Petroleum Corp. (In re Davis Petroleum Corp.), 385 B.R. 892, 922 (Bankr. S.D. Tex. 2008)

("[P]rinciples of *res judicata* bar subsequent litigation of any issues that could have been raised

as part of the confirmation proceedings.").  Breitner had notice and an opportunity to be heard

with respect to the Plan and the Confirmation Order; indeed, Breitner objected to the

confirmation of the Plan, though it did not object to the exculpation provisions of the Creditor

Trust Agreement.  (Compl. Ex. H.)   Therefore, Breitner's argument that the exculpation

provision is unenforceable may be barred by *res judicata*, and is an insufficient basis to dismiss

the claim.

Breitner argues that the Creditor Trust Agreement terminated according to its terms, and

therefore, it cannot preclude its action against Garbarini.  The Trustee argues that, even if the

Creditor Trust Agreement terminated, Breitner's claims fall within the time that it was effective.

This Court does not agree with Breitner that the termination of the Creditor Trust Agreement

precludes the Trustee's claim.  See Young Women's Christian Ass'n of the U.S.A, Nat'l Bd. v.

HMC Entm't., Inc, 1992 WL 279361 at *4 (S.D.N.Y. Sept. 25, 1992) (choice of forum provision

of terminated contract survives and controls over party's claims based on that contract).  The

terms of Creditor Trust Agreement § 5.8 do not support a conclusion that Garbarini is only

released during the life of the Creditor Trust, but that liability attaches as soon as the Creditor

Trust terminates upon completion of its purpose.

The Trustee alleges that Garbarini is a professional retained by the Trust, and that by

virtue of Creditor Trust Agreement § 5.8, it is shielded from personal liability for services

rendered in connection with the affairs of the Trust, including, mediating medical malpractice

claims.  Although it is possible that Garbarini engaged in actions that are excepted from this

provision's scope, such as bad faith, willful misconduct, gross misconduct, gross negligence,

breach of fiduciary duty, or willful disregard of its duties, the facts as alleged by the Trustee set forth a plausible claim that Breitner's third-party action violates this provision.  As such, Breitner's motion to dismiss this claim is denied.

Breitner agues that if Confirmation Order ¶ 22 and Creditor Trust § 5.8 "provides an eternal free pass" for Garbarini, it would also preclude Dr. Bey's legal malpractice claim against Breitner because Breitner was a retained professional of the Creditor Trust.  This argument is entirely irrelevant to Breitner's motion to dismiss the Trustee's claim against Breitner.

       C.       <u>Injunction under § 105 of the Bankruptcy Code</u>

The Trustee seeks a permanent injunction pursuant to § 105 of the Bankruptcy Code enjoining the prosecution of the Garbarini third-party action.

Breitner argues that the Trustee has not pleaded and cannot prove the necessary elements to obtain a permanent injunction, <u>i.e.</u> that: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for the injury; (3) an equitable remedy is warranted based on the balance of hardships between the plaintiff and defendants; and (4) the public interest would not be disserved.  Breitner also argues that, since Confirmation Order ¶¶ 20 and 22 are inapplicable to bar its third party complaint against Garbarini, the Court may not grant an injunction under § 105.

As discussed above with respect to the Debtor Action, there is ample authority for the imposition of a permanent injunction under § 105(a) of the Bankruptcy Code to enable the Court to implement and enforce its orders.  <u>Britestarr Homes</u>, 368 B.R. at 108;  <u>Adelphia</u>, 345 B.R. at 85; <u>Ames</u>, 317 B.R. at 274.  Therefore, since the Trustee's claims that Breitner's cross-claims violate the Confirmation Order are sufficient to withstand  Breitner's motion to dismiss, there is

no basis to conclude that the Trustee's allegations do not plead a plausible claim for an injunction under § 105 to enforce that order.

D.    <u>Damages</u>

The Trustee seeks an award of damages for Breitner's willful violation of the Confirmation Order, the Creditor Trust Agreement, and for "abuse of process."

Breitner seeks to dismiss this claim, arguing that sanctions are unavailable under Rule 11 of the Federal Rules of Civil Procedure, or under 28 U.S.C. § 1927.  This argument must be rejected because the complaint does not seek damages pursuant to those sections, but rather seeks damages based on the violations of the Confirmation Order.  Since this Court has concluded that the complaint sufficiently pleads a claim that Breitner violated the Confirmation Order, it follows that the complaint sufficiently pleads a basis for a claim for damages, which may be available when a party violates a court order.  <u>See</u> <u>N.Y. State Nat'l Org. for Women v. Terry</u>, 159 F.3d 86, 96 (2d Cir. 1998) (a court may order that attorney's fees and costs be paid to the party prosecuting the contempt for the other party's willful disobedience of a court order).

For all these reasons, Breitner's motion to dismiss the Trustee's complaint must be denied.

<u>Conclusion</u>

For the foregoing reasons, Breitner's motion for summary judgment in the Debtor Action and its motion to dismiss the Trustee Action are denied.  A separate order will issue.

Dated: Brooklyn, New York
        September 29, 2008

                                    <u>***s/Carla E. Craig***</u>
                                    CARLA E. CRAIG
                                    Chief United States Bankruptcy Judge